UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA COOK,

    Plaintiff,

v.                                                    CASE NO. 8:17-cv-2391-T-23AAS

POLK COUNTY SCHOOL DISTRICT,

    Defendant.
_____/

## **ORDER**

As the representative of her daughter's estate, Sandra Cook sues (Doc. 2) the Polk County School District under the Americans with Disabilities Act. Sandra Cook's daughter, Vickee Cook (Cook), was an elementary school teacher employed by the Polk County School District. After the School District declined to renew her contract in 2016, Cook claimed that the School District violated the ADA by discriminating against her based on her disability, by failing to accommodate her disability, and by retaliating against her for requesting an accommodation. Cook died in January 2018 (Doc. 10), and a June 8, 2018 order (Doc. 20) substitutes Sandra Cook as the plaintiff.

The School District moves (Doc. 26) for summary judgment. Although Sandra Cook responds (Doc. 33) untimely and fails to move either to extend the time to respond or to accept the response as timely filed, the response is considered. The

School District presents an affidavit from Beth Nave (Doc. 27), the principal of the school where Cook taught, and an affidavit from Carol J. Wynn-Green (Doc. 28), the School District's equity and compliance analyst.  The School District supplements the affidavits with exhibits, including letters, emails, job descriptions, a medical evaluation of Cook, and evaluations of Cook's performance as a teacher.  No deposition, interrogatory, or admission appears.  Sandra Cook's response (Doc. 33) fails either to offer record evidence or to discuss the record offered by the School District.

Under Rule 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In an ADA action, because a plaintiff bears the initial burden of establishing a prima face case, the School District must show that Sandra Cook has failed to establish a prima facie case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case"); *Cleveland v. Home Shopping Network*, 369 F.3d 1189, 1193 (11th Cir. 2004).  Sandra Cook cannot rest on the pleadings and must show specific facts in the record creating a genuine issue for trial.  *Celotex*, 477 U.S. at 324 ("the nonmoving party [must] go beyond the pleadings and by her own affidavits, or, by depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial") (quotations omitted).

## BACKGROUND

After Cook retired early from Sikes Elementary School in 2007, Purcell Elementary School in the Polk County School District rehired Cook in 2009 on a year-to-year basis. (Doc. 27 at ¶ 3) At the time, Cook informed Nave that Cook suffered from Stargardt's Disease. (Doc. 27 at ¶ 3) According to Sonya Braudway, a physician who evaluated Cook in 2015, Stargardt's Disease atrophies the macula, a part of the eye near the retina, and causes blurred vision. (Doc. 28-4) Braudway characterizes Stargardt's Disease as a "severe vision impairment" that is "chronic." (Doc. 28-4) In 2009, Cook told Nave that Stargardt's Disease is a degenerative condition and that Cook's vision would diminish. (Doc. 27 at ¶ 3) At Nave's direction, the school provided Cook with a "larger computer monitor and a magnifying device for [Cook's] use in the classroom." (Doc. 27 at ¶ 3)

According to Nave, Cook's condition did not affect Cook's ability to teach in 2009 (Doc. 27 at ¶ 3), and evaluations from 2009 through 2013 rate Cook as "highly effective" (Doc. 27-1 at 1–11). But in the fall of 2014, Nave observed that Cook "was struggling to see the board and not performing as well as usual." (Doc. 27 at ¶ 5) On November 14, 2014, Nave emailed Cynthia Sprouse, an employee relations official with the School District, to document seventeen concerns with Cook's performance. (Doc. 27 at ¶ 5; Doc. 27-3) Nave reported that Cook had a "[h]ard time seeing

projected items even close up," "[b]lock[ed] student vision of learning boards because [Cook] is reading the materials and blocks [the students'] view," and "lo[st] place in lesson frequently."  (Doc 27-3)  Nave commented that "[students] have learned to sit idle and do nothing or play with pencils, break them, tear up paper, and things because [Cook] has a hard time seeing."  (Doc. 27-3)

Nave continued to monitor Cook but observed no further problems. (Doc. 27 at ¶ 3)  In an evaluation in May 2015, Nave rated Cook as "effective." (Doc. 27-1 at 17)  Although the 2015 evaluation stated that Cook "need[ed] improvement" in "organizing physical space," "demonstrating knowledge of resources and technology," "designing coherent instruction," and "maintaining accurate records," the evaluation rated Cook as "effective" in "managing classroom procedures" and "managing student behavior."  (Doc. 27-1 at 16–17)

On June 29, 2015, Cook met with Wynn-Green to discuss a possible accommodation for Cook's diminishing vision.  (Doc. 28 at ¶ 2)  As part of the process for obtaining an accommodation, Braudway conducted a medical evaluation of Cook on July 13, 2015.  (Doc. 28-4)  Braudway reported that Cook was legally blind, "unable to see distance," and "unable to read with regular glasses." (Doc. 28-4 at 2)  Provided with a teacher's job description, Braudway concluded that Cook could not, even with an accommodation, perform the "essential functions" of teaching. (Doc. 28-4 at 3)   Braudway asserted that an electronic magnifier "can help with" Cook's vision and recommended an electronic magnifier as a "reasonable

accommodation." (Doc. 28-4 at 3) Alternatively, because of Cook's impairment and the "extreme effort" required to teach, Braudway asked the School District to consider reassigning Cook to teaching support. (Doc. 28-4 at 3)

On July 14, 2015, Cook met with Wynn-Green to provide Braudway's evaluation and to complete the request for an accommodation. (Doc. 28 at ¶ 8; Doc. 28-3) As suggested by Braudway, Cook and Wynn-Green discussed reassignment to teacher support, but Cook declined and instead expressed interest in employment as a reading coach. (Doc. 28 at ¶ 9) Because a reading coach requires three to five years of "highly effective" evaluations, which Cook lacked, Wynn-Green concluded that Cook was unqualified. (Doc. 28 at ¶ 9; Doc. 28-5 at 2)

Ultimately, Cook requested a "video magnifier and text reader" and a "portable video magnifier." (Doc. 28-3) These devices would duplicate the classroom "magnifying device," which Nave already had provided, as well as Cook's own "portable magnifying device," which Cook had been using. (Doc. 27 at ¶ 7) Cook stated that having the requested "video magnifier and text reader" would allow Cook to keep a "video magnifier and text reader" at home and avoid damaging the device while transporting the device to and from school. (Doc. 28-3)

The School District's ADA Committee approved Cook's request in August 2015. (Doc. 27 at ¶ 8; Doc. 28 at ¶ 10) However, the school never purchased the approved devices because, according to Nave, "the approval was contingent on the

current accommodations being insufficient" and Cook's requested devices would "duplicate the devices already being used by [Cook]."  (Doc. 27 at ¶ 8)

In the fall of 2015, although Nave continued to rate Cook as "effective" (Doc. 27-1 at 18–19), Nave again noticed that in the classroom Cook struggled to see.  (Doc. 27 at ¶ 9)  In November 2015, Nave reassigned Cook as a co-teacher.  (Doc. 27 at ¶ 10; Doc. 27-4)  According to Nave, the assignment "was meant to be temporary and [to allow Cook] to finish the school year while looking for" alternative employment and was not meant to affect Cook's compensation or seniority.  (Doc. 27 at ¶¶ 10–11)

Cook took family medical leave on March 26, 2016.  (Doc. 27 at ¶ 12; Doc. 27-5 at 2).  Three days later, Nave informed Cook that the School District would not renew Cook's contract for the 2016–2017 school year.  (Doc. 27 at ¶ 13; Doc. 27-6)  According to Nave, the School District declined to renew Cook's contract not because of Cook's request for an accommodation or Cook's disability, but rather because, as asserted by Braudway, Cook was unable "to perform the essential functions" of teaching.  (Doc. 27 at ¶ 13)

## DISCUSSION

To establish a prima facie case for disability discrimination, a plaintiff must show that the plaintiff had a disability, was a "qualified individual," and was subjected to unlawful discrimination because of the disability.  *Morisky v. Broward Cty.*, 80 F.3d 445, 447 (11th Cir. 1996).  Because 42 U.S.C. § 12112(b)(5)(A) defines

discrimination based on a disability as including "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified" employee and because Sandra Cook alleges (Doc. 2 at ¶ 26) that the School District discriminated against Cook by denying Cook a reasonable accommodation,[1] Count One (disability discrimination) and Count Two (failure to accommodate) require the same showing.

The parties agree that Cook was disabled but dispute whether Cook was a "qualified individual." Under 42 U.S.C. § 12111(8), a "qualified individual" is a person who "with or without reasonable accommodation, can perform the essential functions" of the person's job. The School District argues that Cook was not a qualified individual because Cook could not manage the classroom, an "essential function" of teaching. (Doc. 27-2 at 2) Nave documented trouble in Cook's classroom management (Doc. 27-3; Doc. 27 at ¶ 9), and Braudway concluded that Cook could not, even with accommodation, perform the "essential functions" of teaching. (Doc. 28-4 at 3) But a rational juror might instead reasonably credit Nave's evaluations that consistently rated Cook as "effective," including in "managing classroom procedures" and "managing student behavior" (Doc. 27-1),

---

[1] Besides alleging that the School District discriminated against Cook by failing to provide a reasonable accommodation, Count One asserts that the School District discriminated against Cook by failing "to engage in an interactive discussion about accommodations" with Cook. (Doc. 2 at ¶ 26); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) (recognizing that the ADA might require an employer to "engage in an 'interactive process'" with an employee requesting an accommodation). But in accord with School District procedure, Wynn-Green and Cook discussed options for an accommodation, including reassignment to a teacher support position. (Doc. 28 at ¶ 9)

and might find Braudway's conclusion contradicted by Braudway's assertion that an electronic magnifier "can help with" Cook's limitation (Doc. 28-4 at 3). A genuine issue of fact exists about whether Cook could perform the "essential functions" of teaching and whether Cook was a qualified individual.

If a plaintiff is a qualified individual, as Cook might have been, an employer's failure to provide a "reasonable accommodation" constitutes discrimination. *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1262 (11th Cir. 2007). Under 29 C.F.R. § 1630.2(o), a "reasonable accommodation" is a modification or adjustment to the work environment, or to the manner or circumstances under which the position is customarily performed, that enables a qualified individual with a disability to perform the position's essential functions. A plaintiff bears the burden to identify a "reasonable accommodation." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000).

The appendix to 29 C.F.R. § 1630.9 declares that the obligation to reasonably accommodate excludes "modifications that are primarily for the personal benefit of the individual with a disability." Further, "an adjustment or modification [that] assists the individual throughout his or her daily activities, on and off the job, will be considered a personal item that the employer is not required to provide."

Cook identified two devices, "a video magnifier and text reader" and a "portable video magnifier," as an accommodation. (Doc. 28-3) Cook's requested accommodation would not have modified or adjusted Cook's work environment

- 8 -

because the request merely would have duplicated the devices Cook already used in the classroom. Rather, Cook admitted that if the School District granted her request, she would keep the new devices at home. (Doc. 28-3 at 1) Although receiving the redundant devices might have provided personal convenience, Cook was not denied a "reasonable accommodation" as defined by the ADA.

Also, because "reassignment to another position is a required accommodation only if . . . the employee is otherwise qualified [for the position]," the School District's failure to reassign Cook as a reading coach is not discriminatory. *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997). Cook was unqualified because a reading coach requires three to five years of "highly effective" ratings, which Cook lacked. (Doc. 28 at ¶ 9; Doc. 28-5 at 2) Because the School District demonstrates both that Cook failed to request a "reasonable accommodation" and that Sandra Cook fails to establish a prima facie case for disability discrimination and failure to accommodate, the School District is entitled to summary judgment on Counts One and Two.

Moving to dismiss Sandra Cook's retaliation claim, the School District argues that Sandra Cook cannot show a prima facie case for retaliation because no causal connection exists between Cook's request for an accommodation and the School District's decision not to renew Cook's contract. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) (finding that a claim for retaliation under the ADA requires showing a statutorily protected activity, an adverse employment

action, and a causal connection between the protected activity and the adverse action). *Clark County School District v. Breeden* instructs that if a plaintiff relies on "mere temporal proximity" to establish a causal connection, the temporal proximity "must be very close." 532 U.S. 268, 273, 274 (2001) (quotations omitted). *Breeden* cites circuit decisions concluding that three months or four months between the protected activity and the adverse employment action is insufficiently proximate to establish a causal connection. The Eleventh Circuit adheres closely to *Breeden*'s three- or four-month frame. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (recalling that *Breeden* "cited with approval decisions in which a three to four month disparity was found to be insufficient to show causation" and stating that "[i]f there is substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law").[2] Absent additional record evidence showing that the plaintiff's protected activity caused the adverse employment action, a nine-month gap between a plaintiff's protected activity and a defendant's adverse employment action presumptively negates the inference of a causal connection. *Delong v. Best Buy Company, Inc.*, No. Civ.A. 104CV25TWT, 2006 WL 562195, at *21 (N.D. Ga. Mar. 7, 2006) (Thrash, J.) (adopting report and recommendation of Hagy, M.J.) ("As a matter of law, however, the eight to nine months that passed between Plaintiff's

---

[2] *But see*, Littlejohn *v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015); *Coleman v. Donohoe*, 667 F.3d 825, 861 (7th Cir. 2012); *Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2013); *Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003).

protected activity and her termination is too great to create a question of material fact").[3]

Sandra Cook fails to show a fact in the record suggesting that a causal connection exists between Cook's request for an accommodation and the School District's decision to not renew Cook's contract. And because Cook's request and the School District's decision are insufficiently proximate, Sandra Cook fails to establish a prima facie case for retaliation.

## CONCLUSION

The School District's motion (Doc. 26) for summary judgment is **GRANTED**. The clerk is directed to enter judgment for Polk County School District and against Sandra Cook on each count and to close the case.

ORDERED in Tampa, Florida, on January 11, 2019.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[3] Also, a nine-month gap presumptively negates a causal connection under Title VII. *Caszeau v. Wells Fargo Bank, N.A.*, 614 Fed. Appx. 972, 982 (11th Cir. 2015); *Curtis v. Broward Cty.*, 292 Fed. Appx. 882, 885 (11th Cir. 2008); *Olson v. Lowe's Home Cntrs, Inc.*, 130 Fed. Appx. 380, 393 (11th Cir. 2005).